# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3206 | **DATE** | 6/6/2002 |
| **CASE TITLE** | Dickal 770 LLC vs. PRN Corporation et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Plaintiff's motion to remand this case to the Circuit Court of Cook County is granted. [3-1] Plaintiff's motions to strike are moot. [12-1, 13-1] Plaintiff's motion for the entry of an order requiring defendants to pay plaintiff for the use and occupancy of the property is moot. [14-1] Plaintiff is awarded its reasonable attorney's fees, costs, and disbursements incurred by reason of the removal proceedings. Further, the Clerk of the Court is directed to remand this case to the Circuit Court of Cook County and to mail a certified copy of the remand order forthwith.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices faxed by judge's staff. | | | | |
| | Notified counsel by telephone. | | JUN 10 2002 date docketed | | |
| | Docketing to mail notices. | | | | 19 |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | | U.S. DISTRICT COURT | 6/10/2002 | | |
| | | 02 JUN 10 AM 11:09 | date mailed notice | | |
| AMM courtroom deputy's initials | | Date/time received in central Clerk's Office | AMM mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|   |   |   |
|---|---|---|
| DICKAL 770 L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 3206 |
| | ) | |
| PRN CORPORATION, f/k/a PICS PREVIEW, INC., PREMIER RETAIL NETWORKS, INC., Q RESIDUAL CORPORATION, MENASHA CORPORATION, and PROMO EDGE COMPANY, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED JUN 1 0 2002

## MEMORANDUM OPINION

Before the court is plaintiff's motion to remand this case to the Circuit Court of Cook County. For the reasons explained below, the motion is granted.

## BACKGROUND

On April 23, 2002, plaintiff, Dickal 770 L.L.C ("Dickal"), filed a forcible entry and detainer action in the Circuit Court of Cook County against defendants PRN Corporation, Premier Networks, Inc.,[1] Q Residual Corporation, Menasha Corporation, and Promo Edge Company. Plaintiff seeks possession of the leased premises at 770 Arthur Avenue in Elk Grove Village, Illinois. Plaintiff alleges that defendants breached the lease by permitting an unauthorized

---

[1] Plaintiff refers to this company as "Premier Retail Networks, Inc."

party to occupy the premises and failing to provide plaintiff with the information necessary to determine the nature of the occupancy, the potential impact of the assignment, and the relationship between the parties. Plaintiff does not seek past due rent or damages. On May 3, 2002, defendants filed a petition to remove the action to this court, asserting the existence of federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. Thereafter, plaintiff filed the instant motion to remand the case to the Circuit Court of Cook County.

## DISCUSSION

### A. Consent of All Defendants to Removal

Plaintiff asserts three grounds for remand, the first being that all defendants have not joined in the removal petition. As plaintiff apparently concedes in its reply, this argument is moot due to defendants' filing of an amended notice of removal on May 17, 2002, which indicates that all defendants have consented to removal.

### B. Complete Diversity of Citizenship

Plaintiff, an Illinois limited liability company, also argues that the defendants have failed to demonstrate complete diversity of citizenship. Specifically, plaintiff argues that defendant Promo Edge Company ("Promo Edge") is an Illinois citizen, which would destroy complete diversity of citizenship. Plaintiff submits a Profit and Loss Statement and a Balance Sheet reflecting Promo

Edge's financial performance for the year ended on February 12, 2002. These statements are labeled "Promo Edge Elk Grove Village," and, according to Dickal, the Profit and Loss Statement indicates that 97% of Promo Edge's gross sales for the year were generated out of its Elk Grove Village facility (the offices at 770 Arthur Avenue). (Plaintiff's Reply, Ex. A.)

Promo Edge, on the other hand, contends that it is a Wisconsin citizen. First, Promo Edge disputes Dickal's interpretation of the Profit and Loss Statement and Balance Sheet. Promo Edge states that the documents actually show that 97% of its sales from the Elk Grove Village facility were outside sales, whereas 2.9% were for sales to other Menasha-owned companies. More significantly, Promo Edge submits the affidavits of Thomas Bender, the Associate General Counsel of defendant Menasha Corporation ("Menasha") and the Secretary of Promo Edge, a wholly owned subsidiary of Menasha. Bender states that "Menasha and Promo Edge are both corporations organized and existing under the laws of the State of Wisconsin, and both have their principal place of business in Neenah, Wisconsin." (Amended Notice of Removal, Ex. E, Bender Aff., ¶ 7.) In the affidavit attached to Promo Edge's surreply, Bender states the following: Promo Edge's headquarters is in Neenah, Wisconsin; four corporate officers and three directors live and work in Wisconsin; and its central bank account is located in Wisconsin. (Defendants' Surreply, Ex. A, Bender Aff., ¶¶ 4, 7-8, 11.)

"In this circuit, a corporation's principal place of business is the place where the corporation has its nerve center." Kanzelberger v. Kanzelberger, 782 F.2d 774, 777 (7th Cir. 1986). The "nerve center" is where the corporation's executive headquarters are located. See Metropolitan Life Ins. Co. v. Estate of Cammon, 929 F.2d 1220, 1223 (7th Cir. 1991). Thus, under the "nerve center" test, "the court considers facts relevant to where the corporation makes its major decisions, rather than the place or places where the corporation transacts business." Trade Solutions Inc. v. Eurovictory Sports, Inc., No. 97 CV 1153, 1998 WL 111639, at *2 (N.D. Ill. Mar. 9, 1998). That a party "does lots of business in Illinois is . . . irrelevant, so long as the record reveals . . . that its 'principal' place of business is elsewhere." Metropolitan Life, 929 F.2d at 1223.

The record shows that Promo Edge's headquarters are located in Wisconsin; Promo Edge's principal place of business accordingly is in Wisconsin. The documents Dickal submits purportedly showing that Promo Edge "does lots of business in Illinois" are irrelevant.

C. **Amount in Controversy**

Plaintiff's third ground for remand is that defendants have failed to demonstrate that the amount in controversy exceeds the sum of $75,000. Plaintiff argues that because it is not seeking (and in no event could it recover) monetary damages, and because

defendant has not shown that the value of the lease is more than $75,000, remand is required.

The party seeking to preserve federal diversity jurisdiction bears the burden of showing that the amount in controversy and complete diversity requirements are met. See Chase v. Shop 'N Save Warehouse Foods, Inc., 110 F.3d 424, 427 (7th Cir. 1997). The starting point in determining the amount in controversy is typically the face of the complaint. See id. In actions seeking declaratory or injunctive relief, however, "it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). The Seventh Circuit uses the "either viewpoint rule," under which the court can calculate the value of the relief requested from the perspective of either party. See McCarty v. Amoco Pipeline Co., 595 F.2d 389, 394-95 (7th Cir. 1979). The court considers "the pecuniary result to either party which the judgment would directly produce." Id. at 393 (emphasis added). Pecuniary results that are speculative or that flow from "collateral sources," such as fines and expenses that a party may incur as a result of judgment, are not considered. See Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 543 (3d Cir. 1995). Although the determination of the amount in controversy is a federal question, where an action turns on state law, federal courts must look to state law to determine the nature and extent of

the right to be enforced. See 14B Charles Alan Wright et al., Federal Practice and Procedure § 3702 (3d ed. 1998); see also BEM I, L.L.C. v. Anthropologie, Inc., No. 98 C 358, 1999 WL 1212643, at *3 (N.D. Ill. Dec. 14, 1999) (Pallmeyer, J.) (citing Horton v. Liberty Mut. Life Ins. Co., 367 U.S. 348, 352-53 (1961)).

The Illinois Forcible Entry and Detainer statute, 735 ILCS 5/9-101 et seq., "provides a summary method of determining the right to possession of property in a dispute between a landlord and a tenant." See BEM I, 1999 WL 1212643, at *4 (citing Subway Restaurants, Inc. v. Riggs, 696 N.E.2d 733, 736 (Ill. App. Ct. 1998)). "The only questions that are to be answered in such a proceeding concern which party is entitled to immediate possession and whether a defense that is germane to the distinctive purpose of the action defeats plaintiff's asserted right to possession." Subway, 696 N.E.2d at 736.

In BEM I, our colleague Judge Pallmeyer described the various methods that federal courts have used for determining the amount in controversy in actions seeking possession of real property. 1999 WL 1212643, at *4. The guiding principle of the BEM I analysis is that the method of determining the value of a lease must be consistent with the nature of the Illinois Forcible Entry and Detainer statute and the fact that the primary remedy available under it is the recovery of possession. We adopt this reasoning.

- 7 -

Defendants first contend that "a multimillion dollar contract is at issue" because future rent payments under the lease total approximately $1,058,000.00. (Defendants' Response at 5-6.) We reject this argument for the same reason suggested in BEM I: in light of the purpose of the Illinois statute regarding forcible entry and detainer, "to provide summary proceedings with a quick resolution on the issue of possession only," the amount of future rents under the term of the lease is not pertinent to an action for forcible entry and detainer in Illinois. BEM I, 1999 WL 1212643, at *5.[2] We are persuaded by plaintiff's common-sense argument that a lease only has value (to either party) to the extent that the rent specified in the lease is below market value.[3] Defendants have not shown, or attempted to show, that the rent under the lease at issue is below market value.

Defendants also contend that, because plaintiff has indicated that it will incur $259,800 in expenses for repairs to the property that will be required at lease termination, "this is a very real damage figure to be calculated by this Court in determining the

---

[2] Although the court in BEM I did not find it necessary to decide whether the amount of future rents was the appropriate standard to apply in determining the value of possessing the leased space, the court noted that it had "serious reservations about the validity of this valuation method. Under such a method, essentially any forcible entry and detainer action involving a commercial lease would be removable to federal court. This would be the result despite the purpose of the Illinois statute to resolve the issue of possession quickly and providing for summary proceedings to do so." BEM I, 1999 WL 1212643, at *5 n.7. We share the court's concerns.

[3] The value to the landlord in terminating such a lease would be that it could re-let the premises for a higher rent. The value to the tenant in keeping such a lease would be in paying a lower rent than it would otherwise.

value of this suit." (Defendants' Response at 7.) We reject this argument because the outcome of this suit will not affect these amounts or determine whether they are due. They are simply not in controversy here. The issue of whether defendants indeed owe these amounts is independent of the issue of whether plaintiff is entitled to immediate possession of the premises.

For the same reason, we reject defendants' argument that their unspecified relocation costs, lost profits and loss of goodwill "associated with the interruption of business" constitute the requisite amount in controversy. The lost profits and loss of goodwill are merely speculative. The relocation costs are not quantified, and therefore do not meet defendants' burden to prove to a "reasonable probability," Shaw v. Dow Brands, Inc., 994 F.2d 364, 366 (7th Cir. 1993), that jurisdiction exists. Moreover, and more importantly, such costs associated with relocation would be a collateral effect of eviction and thus should not be considered in determining the amount in controversy. Accordingly, defendants' request to "present appropriate proof" at a hearing is denied.

### CONCLUSION

Plaintiff's motion to remand this case is granted. Therefore, plaintiff's pending motions (to strike defendants' affirmative defenses and for the entry of an order requiring defendants to pay plaintiff for the use and occupancy of the property) are moot. Pursuant to 28 U.S.C. § 1447(c), plaintiff is awarded its

reasonable attorney's fees, costs, and disbursements incurred by reason of the removal proceedings. Plaintiff may file a petition for such fees and costs pursuant to Local General Rule 54.3, if the parties are unable to reach agreement as to the appropriate amounts. If plaintiff does find it necessary to file a petition, the defendants may have 14 days to respond, and plaintiff 10 days thereafter to reply.

The Clerk of the Court is directed to remand this case to the Circuit Court of Cook County and to mail a certified copy of the remand order forthwith.

DATE:         June 6, 2002

ENTER:        _____
              John F. Grady, United States District Judge